The CITY OF LONG BEACH, State of California, Plaintiffs–Appellants, Cross–Appellees,

v.

STANDARD OIL COMPANY OF CALIFORNIA, Defendant,

and

Exxon Corporation, Defendant–Appellee, Cross–Appellant.

Nos. 93–55156, 93–55157, 93–55214, 93–55215 and 93–55217.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1994.

Decided Jan. 31, 1995.

James N. McCabe, Deputy City Atty., Long Beach, CA, Thomas D. Nevins, Broad,

Schulz, Larson & Wineberg, San Francisco, CA, M. Brian McMahon and Gary W. Hoecker, Hoecker, McMahon, Jeys & Buck, Los Angeles, CA, Richard N. Light, Deputy Atty. Gen., San Francisco, CA, for plaintiffs-appellants.

Howard J. Privett, David A. Destino, Angela C. Agrusa and Brooke K. Richter, Baker & Hostetler, Los Angeles, CA, Richard P. Delaney and Randall M. Ebner, Houston, TX, for defendant-appellee.

Before: REINHARDT and NOONAN, Jr., Circuit Judges and TANNER,* District Judge.

TANNER, District Judge:

The City of Long Beach and the State of California (plaintiffs) appeal from a jury verdict against them and in favor of Exxon. They take issue with four jury instructions given by the trial court and with evidentiary rulings made during the trial. Because we find that the claimed error, if any, in the formulation of the jury instructions was harmless, and because we find that the district court did not err in refusing to admit plaintiffs' proffered evidence, we uphold the jury's verdict in favor of Exxon and AFFIRM. Exxon cross-appeals the district court's denial of their request for attorneys' fees on the plaintiffs' contract claims and upon the district court's grant of the plaintiffs' motion for summary judgment on Exxon's counterclaim. We decide the cross-appeal in a separate memorandum filed concurrently with this opinion.

### FACTUAL BACKGROUND [1]

Plaintiffs own oil fields southeast of Los Angeles and offshore of Long Beach. They entered into a contractors' agreement with various oil companies (who all settled before trial except Exxon) to produce and market the oil. The plaintiffs were paid for the oil by the companies based upon "posted prices"—prices that the purchasers publicly declare they are willing to pay. Posted prices were in turn based upon the "gravity price differential" (GPD) set by the companies. Gravity price differential is a mathematical calculation used to set different prices based upon the weight of the crude. The larger the GPD, the greater the difference in prices between "heavy" and "light" crudes. The "heavier" the crude, the more costly it is to refine and therefore less desirable. The companies will pay less for heavy crude than light crude. The plaintiffs' crude is "heavy."

Plaintiffs' theory is that the companies conspired to maintain artificially low prices for the plaintiffs' crude by setting artificially high GPD's thereby undervaluing the city's oil.[2] As evidence of this conspiracy, plaintiffs contend, the companies set up (through secret meetings in 1961–62) and participated in "three-cut exchanges." A three-cut exchange is a mechanism whereby the companies barter oil between themselves and then pay each other or trade other oil based not on the posted prices, but on refinery product yields. The three-cut exchange "price" was higher than the posted price and, plaintiffs argue, closer to the real value of the oil. Therefore, say plaintiffs, the companies have conspired to fix the price of plaintiffs' oil at an artificially low level.

The defendant companies contended that there was no conspiracy, that the economy and price controls in effect at the time were responsible for the price of the plaintiffs' crude, and that the three-cut exchanges were legitimate business practices. The case went

---

* The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

1. A more detailed account of the facts leading up to the trial of this case appears in this court's opinion reversing the trial court's grant of summary judgment in favor of the defendant oil companies. *See City of Long Beach v. Standard* *Oil Co.,* 872 F.2d 1401 (9th Cir.), *modified,* 886 F.2d 246 (9th Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1032 (1990).

2. Section 1 of the Sherman Act prohibits "[e]very contract, combination ... or conspiracy in restraint of trade or commerce...." 15 U.S.C. § 1.

to trial only against Exxon.[3] After more than 75 days of testimony from over 60 witnesses and the admission of more than 3,000 exhibits between October of 1991 and April of 1992, the jury was given the case. They deliberated for eight days and returned a verdict for Exxon.

## DISCUSSION

### 1. JURY INSTRUCTIONS.

■■■■ "This court 'review[s] jury instructions to determine whether, taken as a whole, they mislead the jury or state the law incorrectly to the prejudice of the objecting party. So long as they do not, we review the formulation of the instructions and the choice of language for abuse of discretion.'" *Reed v. Hoy*, 909 F.2d 324, 326 (9th Cir.1989) (internal citation omitted). If the instructions are challenged as a misstatement of the law, they are then reviewed *de novo*. *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir.1992); *see also Oglesby v. Southern Pacific Transportation Co.*, 6 F.3d 603, 606 (9th Cir.1993) ("where an appellant claims the trial court misstated the elements to be proved at trial ... [we] review the instructions *de novo*.") However, this court will not reverse if the error was more probably than not harmless. *Caballero*, 956 F.2d at 206. It is a less stringent harmless error standard than in a criminal case.

Plaintiffs contend that the district court failed to instruct on a theory of their case and are thus entitled to *de novo* review of this issue, *Stewart v. Ragland*, 934 F.2d 1033, 1042 (9th Cir.1991); however, Exxon disagrees and urges only abuse of discretion review as to the formulation of the instructions regarding three-cut exchanges and gravity price differential. *See Reed v. Hoy*, *supra*.

Plaintiffs challenge four instructions. They first challenge Instruction 12.[4] Their quarrel is with the last sentence of the instruction. The disputed language comes from *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("But antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case."). They argue that this language only refers to summary judgment standards and is inappropriate for jury instructions. They further argue that the district court indicated that it would instruct the jury further as to the limitations, but failed to do so[5], thus leaving the jury without any guidance and thereby committing reversible error.

Commentators have discussed the applicability of *Matsushita* to jury instructions. For instance, the ABA Sample Jury Instructions in Civil Antitrust Cases (1990) cautions against the use of language from *Matsushita* and *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1982), in formulating instructions.[6] Also, this court, in *Arizona v. Standard Oil Co. of California*, 906 F.2d 432, 439 (9th Cir.1990), *cert. denied*, 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991)—another antitrust summary judgment case—appears to have limited the breadth of the *Matsushita* language.

> Nor do we think that *Matsushita* and *Monsanto* can be read as authorizing a court to award summary judgment to antitrust defendants whenever the evidence is plausibly consistent with both inferences of conspiracy and inferences of innocent conduct. Such an approach would imply that circumstantial evidence alone would rarely be sufficient to withstand summary judgment in an antitrust conspiracy case. Af-

---

**3.** The other defendant oil companies all settled with plaintiffs before trial.

**4.** Instruction 12 reads as follows:
   You are not limited in your consideration of the evidence to the bare words of the witnesses. You are authorized to draw such inferences as are justified in the light of your experience as reasonable persons. An inference is a deduction or conclusion which reason and common sense lead one to draw from proved facts. However,

the law limits the range of permissible inferences you may draw from ambiguous evidence in an antitrust case such as this, and I shall instruct you further on such limitations.

**5.** *But see infra* pp. 934–35.

**6.** The Manual of Model Jury Instructions for the Ninth Circuit (1985) directs the user to the ABA's instructions.

ter all, circumstantial evidence is nearly always evidence that is plausibly consistent with competing inferences.

906 F.2d at 439. Recently, the Supreme Court in another summary judgment antitrust case discussed *Matsushita*. In *Eastman Kodak Co. v. Image Technical Services,* —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), the Court said that *Matsushita* "did not introduce a special burden on plaintiffs facing summary judgment in antitrust cases ... *Matsushita* demands only that the nonmoving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated, in that decision." *Id.* at ——, 112 S.Ct. at 2083.

■ Exxon first argues that if Instruction 12 is error, then it was invited by the plaintiffs because the plaintiffs proposed the language "from ambiguous evidence" after the court had proposed Instruction 12 without the language. *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991) ("When the [party] himself proposes the jury instruction he later attacks on appeal, review is denied under the 'invited error' doctrine.") This argument misses the point because the record reflects that the trial court gave the parties a set of draft instructions including the disputed Instruction 12 which appears to be derived from Exxon's proposed instructions to which the plaintiffs objected. It appears that the language "from ambiguous evidence" was added only after the district court overruled the plaintiffs' objection to any language regarding inferences. Plaintiffs did not invite the error they now claim. However, the instruction creates an ambiguity which we next address.

■ Exxon argues that even if the language is error, it is harmless error because the court never "instruct[s] you further on such limitations." Therefore, Exxon argues,

since there were no further instructions on limitations of inferences, the jury could not have limited whatever inferences it drew. Plaintiffs counter this argument by responding that Instruction 38 is the limiting instruction.[7]

Plaintiffs challenge this instruction for basically the same reasons as Instruction 12—that is, it is based on summary judgment language from *Matsushita*—and, they challenge it as the limiting instruction referred to in Instruction 12. It is unclear from the record whether or not the district court intended this to be the limiting instruction, but it could be read either as a limiting instruction or as merely another one of 75 instructions. However, it appears to be drawn from the same paragraph in *Matsushita* that the objectionable language from Instruction 12 was lifted. 475 U.S. at 588, 106 S.Ct. at 1356–57.

Plaintiffs' reliance on *Arizona v. Standard Oil Co., supra* and *Eastman Kodak, supra* is misplaced. They were merely other cases reviewing grants of summary judgment and are thus inapposite. Here, the case went to trial. *Monsanto* was another case that went to trial. In *Monsanto* the Supreme Court said "the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [alleged conspirators] 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" 465 U.S. at 764, 104 S.Ct. at 1471 (quoting *Edward J. Sweeney and Sons Inc. v. Texaco, Inc.,* 637 F.2d 105, 111, n. 2 (3rd Cir.1980), *cert. denied* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981)). Thus, they have to show that the alleged conspirators were not acting independently. These two instructions, while not the most artfully drawn, correctly place this burden on the plaintiffs.

---

**7.** Instruction 38 reads as follows:

In order to show the existence of a conspiracy, plaintiffs must present direct or circumstantial evidence that reasonably tends to prove a conscious commitment to a common scheme designed to achieve an unlawful objective. It is often difficult to show direct evidence of a combination or conspiracy. For this reason, concerted action may be inferred from circumstantial

evidence of defendant's conduct and course of dealings.

However, when relying solely on circumstantial evidence, the evidence must demonstrate that an inference of conspiracy is more probable than an inference of independent action. Conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.

◼ Even if Instruction 12 was erroneous, we find that it amounted to harmless error. The district court, in ruling on plaintiffs' motion for a new trial, found that whatever error may have occurred was harmless. Our review of the record convinces us that given the ambiguity of Instruction 12, and given that Instruction 38 is a correct statement of the law, any error was more probably than not harmless. *Caballero,* 956 F.2d at 206.

◼ Plaintiffs also challenge instruction 58.[8] They contend that instructing the jury about what they were not trying to prove is misleading, and further, that they had always claimed that the three-cut exchanges were a separate violation of § 1 of the Sherman Act. 15 U.S.C. § 1. We review the wording of a particular instruction for abuse of discretion. *Reed,* 909 F.2d at 326.

We find that the district court did not abuse its discretion in giving Instruction 58. The record reflects plaintiffs twice told the court that they would *not* be arguing that three-cut exchanges were violations of § 1 in and of themselves. Furthermore, plaintiffs submitted their own proposed instruction which read: "Plaintiffs are not claiming to have been injured by the three-cut exchanges themselves ... they are evidence of the a[sic] conspiracy to fix...." Viewing the instructions as a whole, *Western Airlines, Inc. v. Criswell,* 472 U.S. 400, 420, 105 S.Ct. 2743, 2754, 86 L.Ed.2d 321 (1985), and considering that plaintiffs are arguing that the court should not have instructed on the issue even though they informed the court precisely as the court instructed, we find that the giving of Instruction 58 was not error.

◼ Finally, plaintiffs objected to Instruction 31[9]; they argue here that the failure to give an instruction on their claim was a failure to instruct on a theory of their case and thus subject to *de novo* review. *Stewart,* 934 F.2d at 1043. Exxon counters that the issue is not whether the district court failed to instruct on a proper theory of the case, but whether plaintiffs' case as tried asserted the theory they now espouse on appeal. With the argument couched in those terms, we agree with the defendant and review for abuse of discretion.

◼ Plaintiffs requested that the district court instruct that in addition to their claim

---

8. Instruction 58 reads as follows:

You have heard evidence concerning three-cut exchanges. Plaintiffs do not assert in this action that three-cut exchanges in and of themselves constituted a violation of the antitrust laws. Plaintiffs contend that three-cut exchanges are circumstantial evidence of the existence of an unlawful conspiracy to fix, maintain, or stabilize prices of California crude oil and of a conspiracy to monopolize. Plaintiffs also contend that Exxon's use of three-cut exchanges is circumstantial evidence of Exxon's joinder in an illegal conspiracy.

You may consider three-cut exchanges in light of the instructions on circumstantial evidence, but not as an independent violation of the antitrust laws. It is the conspiracy, not the three-cut exchanges in and of themselves, which plaintiffs claim caused injury in this case.

9. Instruction 31 reads as follows:

Plaintiffs in this case seek damages for injury to their business or property, claimed to have been suffered or sustained as a result of alleged violations of the antitrust laws of the United States and California by defendant Exxon Corporation and other former defendants. As I instructed you at the beginning of this trial, this lawsuit has been disposed of as against ARCO, Union, Chevron, Mobil, Shell and Texaco. You should not speculate as to what those dispositions were or the reasons therefor. You should not concern yourself with those dispositions. You must decide the case with respect to Exxon solely on the evidence that has been introduced at the trial. In this case, plaintiffs claim:

First: That Exxon combined and conspired with others to fix, maintain or stabilize artificially low prices for plaintiffs' crude oil, in violation of the federal antitrust law, known as Section 1 of the Sherman Antitrust Act.

Second: That Exxon combined and conspired with others to fix, maintain or stabilize artificially low prices for plaintiffs' crude oil, in violation of the California antitrust law, known as the Cartwright Act.

Third: Plaintiff City of Long Beach, both in its proprietary capacity and as trustee for the State of California, also claims that Exxon joined a conspiracy to monopolize trade and commerce in order to control prices and exclude competition in the purchase of crude oil produced in California in violation of Section 2 of the Sherman Antitrust Act. The State of California, as a proprietor, and the class represented by the State do not make a Section 2 conspiracy to monopolize claim.

Fourth: That each of these alleged violations of the federal and state antitrust laws by Exxon was a material cause of damage to the plaintiffs' business or property.

that the defendants conspired to fix or maintain low crude prices, that they also conspired to fix or maintain the gravity price differentials. Throughout this trial, and before trial, the parties exchanged proposed sets of instructions. Plaintiffs proposed preliminary instructions on September 10, 1991 that explained their claim as charging a conspiracy to "fix the prices paid to owners" of California crude. In response to defendant's instructions, plaintiffs again stated that their claim was that defendants conspired "to maintain artificially low posted prices, not to depress the posted prices, which were already depressed." Plaintiffs submitted on October 21, 1991 another set of proposed instructions. Their instruction on the nature of the claims characterizes their claim as charging a conspiracy "to fix or maintain artificially low prices for plaintiffs' crude oil...." In their initial set of instructions, plaintiffs characterized their GPD evidence as circumstantial evidence of the price-fixing conspiracy. Plaintiffs do not point to anything in the record that demonstrates they objected to the failure to give a specific GPD instruction until a document dated April 24, 1992 (shortly before the case went to the jury) wherein they objected to Instruction 31.

Plaintiffs are correct that they are entitled to instructions on the theories of their case if they are supported by the evidence. *Los Angeles Memorial Coliseum Comm'n v. N.F.L.*, 726 F.2d 1381, 1398 (9th Cir.1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). However, Exxon argues that just because evidence as to GPD's was presented (and the parties agree that there was substantial evidence about GPD's presented to the jury), it does not necessarily follow that a party is entitled to an instruction regarding that evidence.

Exxon contends that the evidence submitted does not amount to a separate claim that the defendants conspired to fix the GPD's. They argue that the GPD evidence introduced was merely evidence of the conspiracy as charged.[10] The trial judge evidently agreed with this view of the evidence. We agree with Exxon and the trial court and find that the trial court did not abuse its discretion in failing to include a separate GPD claim in Instruction 31.[11]

## 2. EVIDENTIARY RULINGS.

A trial court's evidentiary rulings are reviewed for an abuse of discretion. *Glover v. BlC Corp.*, 6 F.3d 1318, 1328 (9th Cir.1993). Reversal will not be granted unless prejudice is shown. *Id.* Under Rule 403, even though evidence is relevant, the probative value and the prejudicial effect must also be analyzed under the abuse of discretion standard. *Coursen v. A.H. Robbins Co., Inc.*, 764 F.2d 1329, 1339 (9th Cir. 1985).

Plaintiffs sought to admit a document, TX 661, that consisted of the handwritten notes of William Denning, a Senior Planning Coordinator. The notes allegedly set forth Exxon's knowledge of industry values of the three-cut exchanges. The district court excluded the evidence on three separate occasions as hearsay, ruled that Denning did not speak for Exxon, and found that the document was not a business record.

Plaintiffs argue that the document is admissible for the nonhearsay purpose of demonstrating Exxon's knowledge of the existence of a conspiracy and Exxon's belief as to the three-cut values. They rely heavily upon our decision in *Henein v. Saudi Arabian Parsons, Ltd.*, 818 F.2d 1508 (9th Cir.

10. As additional support for their position, Exxon contends that the plaintiffs argued that GPD's were evidence of the conspiracy during their opening and closing statements, and that it could have refuted the plaintiffs' separate GPD claim, but chose not to do so.

11. The plaintiffs also contend that the remand from this court requires that they prove the defendant conspired to fix the GPD. *City of Long Beach*, 872 F.2d at 1405. The language relied upon by the plaintiffs is that "the city must convince the trier of fact that the companies

conspired, or at least acted in conscious parallel, to fix and post artificially high gravity price differentials resulting in the plaintiffs receiving artificially low prices for its crude." *City of Long Beach*, 872 F.2d at 1405–06. Contrary to the plaintiffs' position, this language merely indicates what the jury has to be convinced of in order to find for the plaintiffs, i.e., the conspiracy to set artificially high GPD's was *evidence* that the defendants entered into a conspiracy to fix or maintain low crude prices.

1987). We need not determine, however, whether plaintiff's assertion is correct because the plaintiffs have not demonstrated prejudice. Indeed, even if the district court had erred, the error would have been harmless. First, the document submitted by the plaintiff had little evidentiary value. The district court ruled that the notes represented nothing more than the "self-reflective musings about the state of affairs in California." In addition, plaintiffs have not pointed to any evidence in the record that Denning passed on his notes to any other employee within Exxon, nor has it presented evidence that he played any role in the relevant decision-making process. It is therefore difficult to understand how these notes can be used to impute Denning's knowledge or beliefs to Exxon. More important, the evidence provided by this document would be, at best, cumulative since the record reveals that the plaintiffs presented numerous other pieces of evidence designed to show Exxon's knowledge. Accordingly, we reject plaintiffs' argument that the district court committed prejudicial error.

■ Plaintiffs also argue that the document was admissible as a party admission under 801(d)(2)(D). Under 801(d)(2)(D), a statement is not hearsay if it is "offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. . . ." They argue that Denning's job at Exxon made him Exxon's agent for purposes of this information. They indicate that he was Exxon's refinery expert on Exxon's California task force and cite to two excerpts of the record. However, nothing in those excerpts indicate in fact that was his role.

Because it is up to the proponent of the evidence to lay the proper evidentiary foundation and because plaintiffs have failed to carry their burden to demonstrate that Denning was acting as an agent of Exxon, we find that the district court did not abuse its discretion by denying the admission of TX 661 on this theory.

■ Plaintiffs further argue that the document should have been admitted as a busi-ness record under 803(6). The substance of the rule has been summed up as follows:

> For a memorandum or record to be admissible as a business record, it must be (1) made by a regularly conducted business activity, (2) kept in the "regular course" of that business, (3) "the regular practice of that business to make the memorandum," (4) and made by a person with knowledge or from information transmitted by a person with knowledge.

> For a record to be considered as having been made in the regular course of business it must be "made pursuant to established company procedures for the systematic or routine and timely making and preserving of company records," and relied upon by the business in the performance of its functions.

> The basis for the business record exception is that accuracy is assured because the maker of the record relies on the record in the ordinary course of business activities.

*Clark v. City of Los Angeles,* 650 F.2d 1033, 1037 (9th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982) (internal citations omitted).

■ Denning authenticated the document and indicated that he created it in the normal course of business. However, he went on to indicate that "it looks to me as if this was a set of notes that I put together for myself, I was trying to organize my thoughts. . . ." The proponent of the evidence bears the burden of laying the proper foundation for the admission. Here, however, based upon the lack of a showing by plaintiffs that the notes were made pursuant to company procedures and relied upon by Exxon, we find that the trial court did not abuse its discretion when it ruled that the notes were mere "self-reflective musings about the state of affairs in California" and not a business record.

■ Finally, plaintiffs argue that the document should have been admitted as a coconspirator's statements under Rule 801(d)(2)(E). Rule 801(d)(2)(E) provides that a statement is not hearsay if it "is offered against a party and is . . . a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." How-

ever, plaintiffs provide no argument as to whom Denning supposedly conspired with to obtain this information. The only testimony about where Denning reviewed the information is provided by Exxon. Denning is quoted as saying he received the information from "Mr. Vogt or Mr. Tolle or some of those people...." Vogt and Tolle were Exxon employees and are thus not coconspirators of Exxon. Based on this record we find that the district court did not abuse its discretion in its failure to admit TX 661 under Rule 801(d)(2)(E).

The district court excluded plaintiffs' proffered evidence regarding the setting of GPD's in Alaska. The trial court excluded this evidence under Rule 403 finding that the evidence was relevant, yet that it went to a "collateral issue" and "would be complicated, confusing and, most importantly, require enormous amounts of additional trial days ... it would virtually amount to a second trial of south Alaska crude pricing." Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Evidentiary rulings under Rule 403 are reviewed for abuse of discretion. *Coursen*, 764 F.2d at 1339. Plaintiffs argue that their evidence would have shown that the GPD's in Alaska were also set artificially high in order to protect the pricing scheme in California.[12] Exxon counters that the evidence offered by plaintiffs would have been voluminous, and that it, in turn, was prepared with voluminous material in rebuttal. Furthermore, the proffered evidence about south Alaska oil did not include any references to Exxon's practices, only practices of other defendants who were no longer in the case and not before the jury. The evidence would have been of marginal relevance because the jury had heard all about the pricing scheme in California; it did not need to

hear about the pricing scheme in Alaska, that, although arguably complementary, would have injected needless confusion into an already complex case. Therefore, we agree with the trial court that the south Alaska pricing evidence would have gone to a collateral issue, was complicated and would be a waste of time. The trial court did not abuse its discretion in refusing to admit this evidence.

AFFIRMED.

12. They also argue that this court's prior opinion ruled on the admissibility of this evidence. Contrary to the plaintiffs' position, however, this court's opinion merely *recited* the evidence the plaintiffs asserted—it *did not* rule on its admissibility. 872 F.2d at 1405.