**Lana MOCKLER, Plaintiff–Appellee,**

v.

**MULTNOMAH COUNTY; Dan Noelle; and Dennis Fitz, Defendants–Appellants,**

**and**

**Pieter Van Dyke; Multnomah County Deputy Sheriff's Association; and Robert Skipper, Defendants.**

Nos. 96–35895, 96–36122.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1998.

Decided March 31, 1998.

**810**

Lisa E. Lear, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Oregon, for defendants-appellants.

Steve Brischetto, Portland, Oregon, for plaintiff-appellee.

Before: PREGERSON, TROTT, and TASHIMA, Circuit Judges.

PREGERSON, Circuit Judge:

Plaintiff Lana Mockler, a former Deputy Sheriff with the Multnomah County Sheriff's Office, sued Sheriff Dan Noelle, Multnomah County, and Deputy Dennis Fitz ("defendants") for hostile environment sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and under Oregon law, ORS § 659.030. Mockler also raised an equal protection claim under 42 U.S.C. § 1983 and a state law claim of intentional infliction of emotional distress.

After trial, a jury returned a verdict finding Multnomah County liable for sexual harassment and retaliation. The jury found that Deputy Fitz and the Sheriff were liable for equal protection violations, and that Fitz was liable for intentional infliction of emotional distress. The jury awarded Deputy Mockler $195,000 in compensatory damages and $30,000 in punitive damages. The defendants filed motions for judgment as a matter of law as to all of Mockler's claims. The district court denied these motions, and the defendants appealed.

Among the issues on appeal, defendants contend that the district court erred in instructing the jury that Multnomah County was liable for sexual harassment and retaliation unless it could prove that it took prompt and effective action to remedy the Title VII violations.[1] Defendants argue that, instead, Deputy Mockler bore the burden of showing that Multnomah County failed to take such remedial action. We have jurisdiction under 28 U.S.C. § 1291. We find that the challenged jury instruction was erroneous, but we conclude that the error was harmless.

---

1. The defendants also challenge the district court's denial of their motions for judgment as a matter of law on Mockler's equal protection and intentional infliction of emotional distress claims.

We affirm the district court's denial of defendants' challenges to these claims in a separate unpublished memorandum disposition.

Therefore, we AFFIRM the district court's denial of defendants' motion for judgment as a matter of law on Mockler's Title VII claim.

## I.

On April 25, 1989 Mockler was hired as a Sheriff's Deputy with the Multnomah County Sheriff's Office ("MCSO"). At roll call on March 18, 1992, Deputy Fred Hill complained that Deputy Mockler was not taking proper care of the patrol car that they shared. In particular, he complained that she would often leave trash in the car and failed to fill the gas tank after her shift. Upon overhearing Hill's comments, Deputy Fitz stated that someone had to "deal with the fucking cunt" and "get that crack under control." He also said that he "didn't give a fuck if [Mockler is outside of the room] and hears this. She's a bitch." One of the officers present during this outburst told Fitz that Deputy Tolliver, Mockler's boyfriend, was not going to like the things he was saying. In response, Fitz said that "anybody that would fuck that [Deputy Mockler] is too lazy to jack off."

When Deputy Mockler learned of this incident she filed a complaint with Chief Deputy Randy Amundsen. Amundsen and Sergeant Wray Jacobs investigated Mockler's complaint. Jacobs chose not to interview all of the people who were present at the incident. Captain Harold Amidon, Commander of the Internal Affairs Unit ("IAU"), was not involved in this investigation. Amidon testified that the investigation by Amundsen and Jacobs did not comply with MCSO's usual procedures for investigating a complaint.

Deputy Mockler complained about this incomplete and informal investigation to Sheriff Robert Skipper.[2] After this meeting, the Sheriff required the IAU to conduct a formal investigation. Subsequent to the formal investigation, Mockler learned that Deputy Fitz would receive a written reprimand. Mockler complained that this discipline was inadequate and recommended that he receive at least three to five days of unpaid leave. The Sheriff ultimately imposed a one-day suspension without pay, but allowed Fitz to work overtime the day after his suspension in order to make up the lost day's pay.

After Deputy Mockler filed her complaint against Deputy Fitz, her supervisor told her that she should "dot her i's and cross her t's." She thereafter was subjected to increased disciplinary action. For example, Fitz obtained one of Mockler's custody reports and complained about its quality with her supervisor. Deputy Van Dyke also forwarded one of Mockler's reports to Fitz, who forwarded it to IAU for review. Mockler was verbally disciplined regarding her reports on several occasions, and she received a Notice of Deficiency for one such report.

Deputy Mockler also received both verbal and written criticism from her supervisors for various offenses including running a red light while making a right hand turn, driving too fast, showing up late for roll call, and being sarcastic over the police radio. Mockler presented testimony from various other officers that showed that other deputies were not being reprimanded for similar conduct.

Finally, Deputy Mockler did not obtain several positions that she applied for after she filed her complaint. Mockler showed that although she was a top candidate for a position on a community policing unit, the officers making the appointments thought that the position was "too politically sensitive" a place for her because she was a "political hot potato." Mockler also sought to be a "Coach" for new recruits in the Sheriff's Office. Deputy Fitz openly sought to prevent her appointment, even after she was placed on the Coach's list. He and Deputy Van Dyke collected her custody reports and complained to her supervisors that the alleged poor quality of these reports should prevent her from being a Coach. Although she was appointed as a Coach, Mockler was not assigned any recruits. The Lieutenant who made these assignments stated

---

**2.** After Sheriff Skipper retired, Deputy Mockler substituted Sheriff Dan Noelle, the new Sheriff, in her suit under Rule 25 of the Federal Rules of Civil Procedure, which provides: "When a public officer is a party to an action in an official capacity and during its pendency dies, resigns or otherwise ceases to hold office, the action does not abate and the party's successor is automatically substituted as a party."

that he didn't think that Mockler should be a Coach because of the "big fiasco" involving the lawsuit.

After these incidents occurred, Deputy Mockler went on administrative leave for three months due to stress and eventually transferred to the Portland Police Bureau in June 1994.

## II.

■ We turn now to the issue involving the challenged jury instruction. "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Chuman v. Wright,* 76 F.3d 292, 294 (9th Cir.1996) (citation omitted). The district court has substantial latitude in tailoring jury instructions, and we review those instructions for an abuse of discretion. *See Larez v. Holcomb,* 16 F.3d 1513, 1516 (9th Cir.1994) (citation omitted). "If the instructions are challenged as a misstatement of the law, they are then reviewed de novo." *City of Long Beach v. Standard Oil Co.,* 46 F.3d 929, 933 (9th Cir.1995) (citation omitted).

■ Defendants contend that the district court erred by instructing the jury that Multnomah County had the burden of proving that it took prompt and effective action to remedy the hostile workplace environment. The district court instructed the jury:

> If you find that the plaintiff, Lana Mockler, was subjected to a hostile workplace because of her sex, *the defendant Multnomah County is liable unless it proves by a preponderance of the evidence that it took prompt and effective remedial measures that were reasonably calculated to end the hostile workplace* after a management level official of the defendant Multnomah County knew, or in the exercise of reasonable care should have known, that plaintiff Mockler was being subjected to a hostile workplace.

(Emphasis added.) Defendants objected to this instruction on the ground that "the burden of proof in this case ... is on the plaintiff [and not on the defendants] with respect to proving that inadequate remedial measures were taken once the county knew of the sexual harassment work environment that's alleged in this case."

■ Defendants are correct. The proper allocation of the burden of proof to show employer liability for hostile workplace environment is set forth in *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983). In *Katz,* the Fourth Circuit explained that "the *plaintiff* must show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation. This showing can ... be rebutted by the employer directly, or by pointing to prompt remedial action reasonably calculated to end the harassment." *Id.* (emphasis added.)[3] The *Katz* court noted further that when "the employer's supervisory personnel manifest[ ] unmistakable acquiescence in or approval of the harassment, the burden on the employer seeking to avoid liability is especially heavy." *Id.* The district court therefore erred in placing on Multnomah County the burden of proving that it took effective remedial action to end the hostile workplace environment.

■ But an error in instructing the jury in a civil case does not require reversal if the error was "more probably than not harmless." *Coursen v. A.H. Robins Co.,* 764 F.2d 1329, 1337 (9th Cir.1985) (jury instruction that improperly shifted the burden of proof to plaintiffs in Dalkon Shield products liability case was more probably than not harmless because other juries given same instruction in separate damage trials found for plaintiffs notwithstanding the error); *Larez,* 16 F.3d at 1516–17 (instruction that shifted one element of plaintiff's burden to the defense was more probably than not harmless because jury found that defendant engaged in extraordinary misconduct and the instruction was am-

**3.** *See also Virgo v. Riviera Beach Assocs. Ltd.,* 30 F.3d 1350, 1363 n. 9 (11th Cir.1994) (plaintiff must show that employer knew or should have known about hostile work environment and failed to take adequate remedial action); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1486 (3d Cir.1990) (plaintiff must show respondeat superior liability as part of her prima facie case); Barbara Lindemann and David D. Kadue, Sexual Harassment in Employment Law 167–69 (1992) (citing *Katz,* 709 F.2d at 256).

biguous and isolated). The harmless error standard used in a civil case is less stringent than that used in a criminal case. *Standard Oil*, 46 F.3d at 933. We conclude that the erroneous instruction was harmless for several reasons.

■ First, although the instruction did not explicitly require Deputy Mockler to bear the initial burden of showing that Multnomah County knew or should have known of the harassment, she clearly satisfied this burden. *See Oliver v. United States*, 921 F.2d 916, 919 (9th Cir.1990) (instruction that failed to state that government had the initial burden of proof on its counterclaim was harmless error because government clearly satisfied this burden). Mockler testified that she filed a complaint with Chief Deputy Amundsen when she heard that Deputy Fitz repeatedly had referred to her in sexually derogatory terms during roll call. She also testified that she spoke to the Sheriff about Fitz's conduct and filed several additional complaints when Fitz and other officers took retaliatory action against her. *See Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir.1982) ("The employee can demonstrate that the employer knew of the harassment by showing that she complained to higher management of the harassment"); *Katz*, 709 F.2d at 255 (plaintiff may show employer knowledge "by proving that complaints were lodged with the employer … "). Defendants do not contest the above facts attested to by Mockler. Therefore, the district court's erroneous instruction did not taint the jury verdict because Mockler clearly demonstrated that Multnomah County knew or should have known of the harassment. *See Oliver*, 921 F.2d at 920 ("Because the government clearly satisfied its initial burden … the district court's failure to inform the jury of that burden could not have tainted the verdict.")

■ Second, Deputy Mockler also satisfied her burden to show that Multnomah County failed to take effective remedial action to end the harassment. We have held that an effective remedy is one that is "reasonably calculated to end the harassment"

and such remedy should be "assessed proportionately to the seriousness of the offense." *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991) (citations omitted). The reasonableness and adequacy of the remedy depends upon its ability to stop the individual harasser from continuing to engage in such conduct and to discourage other potential harassers from engaging in similar unlawful conduct. *Id.*

■ The evidence adduced by both Deputy Mockler and the defendants overwhelmingly demonstrates that Deputy Fitz's one-day suspension did not constitute "effective remedial action" under Ninth Circuit law. The Commander of the IAU testified that the Sheriff's Office deviated from its usual procedures for investigating a complaint when it investigated the roll call incident. The officer handling the investigation admitted that he chose not to interview the people who witnessed the incident. The failure to interview witnesses is evidence of inadequate remedial action. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1529 (9th Cir. 1995). Moreover, Deputy Fitz did not receive a letter of discipline until three months after the incident and although he received a one-day suspension without pay, he was permitted to work overtime the next day to recoup the lost wages.[4] The failure to react promptly to a complaint, or to reprimand the harasser strongly, is evidence relevant to determine whether the employer took sufficient remedial action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

Most importantly, Deputy Fitz admitted that he monitored Deputy Mockler's activities, filed complaints against her, and encouraged her supervisors to discipline her after his one-day suspension. Although Sheriff Skipper told Deputy Fitz to cease his interference with Mockler's activities, he also acknowledged that "it was certainly clear to [him] that Fitz wasn't letting go of the matter." Defendants do not dispute that the Sheriff did not discipline Deputy Fitz for his

---

**4.** One officer testified that he received a one-day suspension for getting into a traffic accident. This suggests that Deputy Fitz's punishment was not proportionate to his offense-which is clearly more egregious than a traffic accident.

continued conduct after his one-day suspension. Defendants also concede that neither Fitz nor any other officers were ever disciplined for retaliating against Mockler by subjecting her to increased disciplinary action or by denying her appointment to various positions after she filed her complaints against Deputy Fitz and the County.[5]

These undisputed facts clearly demonstrate that the County's remedial action was ineffective. Deputy Fitz's one-day suspension did not deter him from harassing Deputy Mockler, and it failed to discourage other officers from harassing and retaliating against her. The County's failure to take *any* remedial action in response to the retaliatory acts by other officers also is clearly inadequate. *See Fuller,* 47 F.3d at 1529 ("If (1) no remedy is undertaken, or (2) the remedy attempted is ineffectual, liability will attach"). Therefore, "[t]he failure to give a proper instruction did not prejudice the defendants because the evidence would have supported a verdict for [Mockler] even with that instruction." *Benigni v. City of Hemet,* 879 F.2d 473, 480 (9th Cir.1988); *Cf. Caballero v. City of Concord,* 956 F.2d 204, 207 (9th Cir.1992) (error *not* harmless because "nothing about th[e] verdict indicate[d] that the result would have been the same without the error.")

■ Defendants argue that Deputy Fitz's behavior was motivated "by a goal of ending the tension within MCSO and, thus, helping his employer." Thus, defendants contend that the County's remedial action was effective, because Fitz did not harass Deputy Mockler after his suspension-he merely sought to assist his employer. We decline to accept defendants' interpretation of Fitz's conduct in light of the jury's verdict on

Mockler's intentional infliction of emotional distress claim. The jury found that Fitz was liable for intentional infliction of emotional distress and awarded Mockler punitive damages.[6] The district court instructed the jury that, in order for Mockler to prevail on this claim, she must show "that the acts of the defendant consisted of some extraordinary transgression of socially tolerable behavior; and ... that the acts of the defendant[ ] *were not within the scope of his employment with the defendants, Multnomah County.*" (Emphasis added.) The jury's verdict against Fitz on this claim demonstrates that the jury did not believe that his conduct was carried out in the interest of the Sheriff's Office.[7]

Moreover, the jury's verdict on Deputy Mockler's intentional infliction of emotional distress claim indicates that the jury found that Deputy Fitz harassed Deputy Mockler even *after* his one-day suspension. The district court instructed the jury that "[t]he comments made by Fitz outside of the presence of plaintiff Mockler [at roll call], standing alone, do not exceed any reasonable limit of socially tolerable behavior." Therefore, to find Fitz guilty of intentional infliction of emotional distress, the jury necessarily had to find that he engaged in harassing conduct beyond the initial name-calling incident and his subsequent one-day suspension.

■ The evidence presented by Deputy Mockler and by the defendants overwhelmingly demonstrates that the County failed to take effective remedial action to end the harassment and retaliation against Deputy Mockler. Defendants' explanation for Deputy Fitz's conduct after his suspension does not satisfy their burden to rebut this showing. We therefore find that the district court's erroneous instruction was harmless

---

**5.** Defendants argue that the Sheriff's Office investigated Deputy Mockler's retaliation claims and found them to be without merit. The jury's verdict in favor of Mockler's retaliation claim demonstrates that her claims did have merit.

**6.** Defendants do not contend that the district court erred in instructing the jury on Deputy Mockler's intentional infliction of emotional distress claim against Deputy Fitz.

**7.** *See also Larez,* 16 F.3d at 1516–17 (erroneous instruction that failed to require plaintiffs to bear

the ultimate burden of showing that seizure was unreasonable was harmless because jury's award of punitive damages showed that the jury nonetheless did find that the seizure was more than unreasonable); *Benigni,* 879 F.2d at 480 (erroneous instruction that failed to explain that defendants had to prove that their conduct was reasonable was harmless because the jury's award of punitive damages against them indicates that the jury found that their conduct was more than unreasonable).

and we affirm the district court's denial of defendants' motion for judgment as a matter of law on Mockler's Title VII claim.[8]

AFFIRMED.

---

**8.** Defendants' other challenges to the jury verdict on Mockler's Title VII claim lack merit. We review the denial of a motion for judgment as a matter of law de novo. *Acosta v. City and County of San Francisco,* 83 F.3d 1143, 1145 (9th Cir. 1996). "Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury." *Id.* The jury's verdict is reviewed to determine whether it is supported substantial evidence. *Murray v. La-* *borers Union Local No. 324,* 55 F.3d 1445, 1452 (9th Cir.1995). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Id.* Our review of the record reveals that substantial evidence supports the jury's finding of sexual harassment and retaliation.

