**NATIONAL ORGANIZATION FOR WOMEN, et al.,**
Plaintiffs-Appellants,

v.

**BANK OF CALIFORNIA, NATIONAL ASSOCIATION, et al.,**
Defendants-Appellees.

No. 81–4299.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1982.

Decided July 8, 1982.

Robert L. Gnaizda, San Francisco, Cal., for plaintiffs-appellants.

Dennis H. Vaughn, Paul, Hastings, Janofsky & Walker, Santa Monica, Cal., for defendants-appellees.

Before BROWNING, Chief Judge, SWYGERT * and WRIGHT, Circuit Judges.

PER CURIAM:

This appeal arises out of district court administration of a consent decree in a Title VII suit. Plaintiffs National Organization for Women, National Association for the Advancement of Colored People, American G. I. Forum ("the organizational plaintiffs"), and several named individuals filed this class action in 1972. They alleged that defendant Bank of California ("the Bank") unlawfully discriminated against Blacks, women, and Spanish-surnamed persons. The parties entered into a consent decree in 1973. The decree defines the Spanish-Surnamed class it protects as "persons with Spanish surnames and others, those with Spanish-American background, including Mexican Americans, Cubans, Puerto Ricans and those from Central and South America. This category does not include those of Portuguese ancestry."

The decree was administered without dispute until September, 1977, when plaintiffs moved to require the Bank to show cause why it should not be held in contempt. Within the next year, plaintiffs filed a retaliation claim on behalf of two Bank employees, a motion to modify the consent decree, and a motion for an audit of the Bank's performance in hiring Spanish-surnamed persons under the consent decree. The court found there had been no retaliation and denied the motion to modify the consent decree.

* Honorable Luther M. Swygert, Senior Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

The parties agreed to a partial audit of Spanish-surnamed employees. The consent decree requires the parties to split the cost of audits equally "except that upon a determination by [the] auditor or by the Court that there has been a substantial omission or inaccuracy in the information supplied by the BANK, expenses shall be borne solely by the BANK."

The auditor investigated the backgrounds of a random sample of the persons the Bank listed as Spanish-surnamed. He found that all the listings were made in good faith and were inaccurate only in that 45% of the sample was not genuinely part of the protected class because these individuals had origins in peninsular Spain. He reasoned that such people are not disadvantaged and thus ought not be protected in discrimination suits. He derived his classification from his own research rather than from the consent decree.

On the basis of these findings, plaintiffs moved for a complete audit of all persons listed as Spanish-surnamed. They argued the consent decree should be interpreted to effectuate its purpose, to protect people who are discriminated against. Because people of peninsular Spanish origin are not discriminated against, plaintiffs argued, the auditor's classification was correct. The Bank responded that the definition in the consent decree includes persons of peninsular Spanish origin and that the audit therefore showed the Bank was in compliance with the consent decree. It argued that plaintiffs were attempting to modify the consent decree.

The transcript of the district court hearing shows that the question whether a complete audit should be ordered turned on whether the auditor's use of his own classification effectively nullified his determination that the Bank's information was erroneous. The court denied the motion without an opinion. Plaintiffs did not appeal.

On October 12, 1978, plaintiffs moved to require the bank to pay the full cost of the audit. At the hearing, the court stated that the October 12 motion raised precisely the same question as the earlier motion for a complete audit: whether the auditor's report constituted a determination that the Bank's information was erroneous. The court denied the motion without an opinion. Plaintiffs did not appeal.

In February, 1980, the parties settled all outstanding claims except the question of fees and costs.

In April, 1980, the Bank moved to recover attorneys' fees and costs with respect to the retaliation claim and the motions concerning the audit and for costs only with respect to the contempt proceedings. The district court awarded attorneys' fees for the October 12 motion and for that part of the motion for fees attributable to the October 12 motion. It awarded costs for the retaliation claim, the motions concerning the audit, and part of the motion for fees and costs. It declined to make any award for the contempt proceedings. Plaintiffs appeal from the judgment awarding fees and costs.

## I. *Attorneys' Fees*

■ The standard of review is abuse of discretion. 42 U.S.C. § 2000e–5(k); *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1301 (9th Cir. 1981). The standard that should "inform a district court's discretion in deciding whether to award attorney's fees to a successful *defendant* in a Title VII" case is whether the action is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. E. E. O. C.*, 434 U.S. 412, 417, 421, 98 S.Ct. 694, 698, 700, 54 L.Ed.2d 648 (1978) (emphasis in original).

■ As noted above, the district court found that the October 12 motion turned on precisely the same question as the motion for a complete audit. It therefore found that the October 12 motion met the *Christiansburg* standard. This finding was not an abuse of discretion.

Plaintiffs argue that it was nonetheless an abuse of discretion to award fees because American G. I. Forum, the Mexican-American organizational plaintiff, has very limited resources. *See Faraci v. Hickey-*

*Freeman Co.*, 607 F.2d 1025 (2d Cir. 1979) (fee award reduced due to plaintiff's indigence). The district court properly distinguished *Faraci* on the basis of its findings that the organizational plaintiffs were all liable for plaintiffs' half of the cost of the audit and the fee award, that plaintiffs together could afford the sums involved, and that "a full award is necessary to deter frivolous litigation." We perceive no error in the findings and no abuse of discretion in the conclusion.

## II. Costs

■ Costs are awarded to the prevailing party in civil actions as a matter of course absent express statutory provision, "unless the court otherwise directs." Fed.R.Civ.P. 54(d). The standard of review is abuse of discretion. *United California Bank v. THC Financial Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977).

■ In this case, the district court exercised its discretion to deny the Bank costs for some of the motions on which it prevailed. The district court considered the plaintiffs' limited budgets. The court did not abuse its discretion.

■ Plaintiffs argue that the *Christiansburg* standard for awards of attorneys' fees should be applied to awards of costs in Title VII actions. There is no express statutory provision for applying *Christiansburg* to cost awards, and we see no reason to impose rigid limitations on the district court's discretion.

The judgment of the district court is AFFIRMED. Each party shall bear its own costs on appeal.

SWYGERT, Senior Circuit Judge, dissenting.

I believe that the district court abused its discretion in awarding attorney's fees and costs to the defendants. Attorney's fees were awarded for the plaintiff's October 12 motion (and for that part of the motion for fees attributable to the October 12 motion). The district court found that this motion met the *Christiansburg* standard of "frivolous, unreasonable, or without foundation."

Costs were awarded for the October 12 motion as well as for an unsuccessful retaliation claim pursued by the plaintiffs.

### Attorney Fees

The parties agreed to a partial audit of Spanish-surnamed employees. The auditor investigated a random sample of the persons listed by the company as Spanish-surnamed. He found the listings substantially inaccurate because forty-five percent of these people had origins in peninsular Spain. The auditor reasoned that these people were not disadvantaged and so were not the true focus of the consent decree.

On the basis of the auditor's finding, the plaintiffs moved for a complete audit of all persons listed as Spanish-surnamed. They argued that the court should accept the auditor's premise that people with origins in peninsular Spain were not the object of the consent decree. The defendant responded that a full audit was unnecessary. It argued that the auditor's finding was incorrect because the definition of "Spanish-surnamed" in the consent decree included persons of peninsular Spanish origin. The court decided that the definition in the consent decree governed and so a full audit was not warranted.

On October 12 the plaintiffs then made a second motion to require the bank to pay the full cost of the initial partial audit. The district court denied this motion and it is this motion that was found frivolous. The district court believed that the second motion turned upon the same question as the first one—whether the auditor had used the correct definition of "Spanish-surnamed" in evaluating the sample. But this is incorrect. The relief sought, the legal issues, and the language of the consent decree to which the motions were directed were all different. The first motion sought a full audit, it concerned whether the auditor's findings were legally correct, and it focused on the proper definition of the term "Spanish-surnamed." The second motion, in contrast, sought payment for the partial audit, concerned what the auditor found (whether correct or not), and focused on the language of the consent decree stating that

if the auditor *or* the court found substantial inaccuracies by the bank, then the bank was to pay the full cost of the audit.

I believe that the district court erred in not awarding plaintiffs the cost of the audit. While the October 12 motion is not directly before us, the trial court characterized it as frivolous and assessed substantial attorney's fees against the plaintiffs because they pursued it. For this reason this court must evaluate the October 12 motion. Moreover, even if my conclusion as to the merits of the October 12 motion is incorrect, it is clear that the motion was not identical with the first one and not at all frivolous. The award of fees should be reversed.

*Costs*

The trial judge awards costs to the prevailing party unless his discretion dictates otherwise. I believe that in this case the award of costs was incorrect. At the very least, I believe that the award of costs was excessive and should be reduced.

The court's discretion in awarding costs in Title VII cases should be guided by the *Christiansburg* standard. If a Title VII plaintiff pursues an unsuccessful but reasonable claim, he should not be assessed costs. *See Dual v. Cleland,* 79 F.R.D. 696, 697 (D.D.C.1978); *cf. August v. Delta Air Lines, Inc.,* 600 F.2d 699 (7th Cir. 1979), *affirmed on different grounds,* 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981) (award of costs pursuant to Rule 68 read liberally in light of Title VII policy). Moreover, if the bank's appellate brief is at all indicative of its work in the district court, its costs are far in excess of what is "reasonably necessary." The brief is far too lengthy. For example, it discusses at length pre-*Christiansburg* cases which are completely irrelevant to this appeal; in addition, it details motions filed in the district court that have no relevance whatever to this appeal. I do not believe that the plaintiffs should be forced to bear these excessive costs. The magistrate had reduced the costs awarded to the defendants, but the district judge reinstated the full amount. I see no basis for this action.

I would order each side to bear its own costs. Alternatively, I would, at the very least, reduce the costs awarded the bank.

I dissent.