**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ESTATE OF DOROTHY MARTIN; and
MARY MARTIN,
              *Plaintiff-Appellants,*

                v.

CALIFORNIA DEPARTMENT OF
VETERANS AFFAIRS, a California
Public Corporation; BRUCE
THIESEN, individually and as
Secretary of the California
Department of Veterans Affairs;
GEORGE H. ANDRIES, JR.,
individually and as Deputy
Secretary for Veterans Homes;
MARCELLA MCCORMACK,
individually and as Administrator
of Veterans Home of California,
Yountville; JOHN HELTSLY,
individually and as Administrator
of Veterans Home of California,
Barstow; and TOM ARNOLD,
individually and as Administrator
of Veterans Home of California,
Chula Vista,
              *Defendants-Appellees.*

No. 06-16850

D.C. No.
CIV-02-02334-DFL-
GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Argued and Submitted
June 13, 2008—San Francisco, California

3601

Filed March 26, 2009

Before: J. Clifford Wallace, Harry Pregerson,* and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber;
Partial Concurrence and Partial Dissent by Judge Pregerson

---

*Judge Pregerson was drawn to replace Judge Schiavelli. He has read
the briefs, reviewed the record, and listened to the recording of oral argu-
ment held on June 13, 2008.

**COUNSEL**

Chad Carlock, Law Offices of Chad Carlock, Davis, California, for the plaintiffs-appellants.

John Ruocco, California Department of Veterans Affairs, Sacramento, California, for the defendants-appellees.

**OPINION**

GRABER, Circuit Judge:

Plaintiffs, the Estate of Dorothy Martin and Mary Martin, Dorothy's daughter, claim that Defendants the California Department of Veterans Affairs ("Department") and its offi-

cers and administrators illegally denied Dorothy Martin admission to the Veterans' Home of California ("Home") because of a disability, specifically, Alzheimer's disease and Alzheimer's-related dementia. The district court granted judgment as a matter of law to Defendants on some of Plaintiffs' claims, and a jury returned a verdict in favor of Defendants on the remainder. We hold that the rejection of Dorothy Martin's applications did not violate the Equal Protection Clause, the Rehabilitation Act, or the Americans with Disabilities Act and therefore affirm.[1]

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs' claims arise from Dorothy's unsuccessful applications to reside at the Home.[2] These facilities provide a "home . . . for aged and disabled persons who served in the Armed Forces of the United States of America[,] who were discharged or released from active duty under honorable conditions," and who are California residents at the time of application. Cal. Mil. & Vet. Code § 1012(a).

Admission also depends on additional factors. Department regulations direct the Home to admit eligible applicants, "provided that care for their needs can be furnished within the available resources of the Veterans Home and subject to the levels of care for which direct admission is permitted." Cal. Code Regs. tit. 12, § 501(a). The regulations further provide that the "ability of the Veterans Home to provide adequately and appropriately for the applicant's medical and social needs and the applicant's ability and willingness to adapt to the Veterans Home environment shall be determining factors." *Id.*

---

[1]Plaintiffs also challenge the district court's jury instructions and certain of its evidentiary rulings. On those issues, we agree with the district court and affirm its rulings.

[2]The Department operates the Home at three Campuses, one each in Barstow, Chula Vista, and Yountville. Applicants apply to each Campus separately.

§ 501(d) (emphasis added). The Home "shall refuse admission to applicants with medical conditions or disabilities requiring specialized care, handling, or treatment . . . or other resources not available at the Veterans Home." *Id.* § 501.1 (emphasis added). In addition, admission is provided only on a "first come, first served basis." *Id.* § 502(a).

The Home is licensed by the State of California Department of Health Services to provide five levels of care: (1) independent living or domiciliary; (2) assisted living or residential care; (3) intermediate care; (4) skilled nursing care; and (5) acute hospital care.[3] *Id.* § 503. Residents move through the levels of care according to their medical needs.

The evidence at trial showed that Dorothy required Skilled Nursing Care,[4] the second-highest level of care available to residents, at the time of her applications. During the period she sought admission, an applicant could not be admitted directly to Skilled Nursing Care unless the occupancy rate at that care level was below 75%. *Id.* § 503(f). In addition, at that time, the Barstow and Chula Vista Campuses did not provide Skilled Nursing Care to new applicants,[5] and the Yountville Campus was admitting residents to the domiciliary level of care only.

Dorothy was diagnosed with Alzheimer's and Alzheimer's-related dementia in 1998. Over an approximately 18-month

---

[3]Acute hospital care is the highest level of care available and provides intensive care on a 24-hour basis. Cal. Code Regs. tit. 12, § 503(g). Veterans cannot enter a Home at this level of care, so it is not relevant to the issues on appeal.

[4]Skilled Nursing Care provides residents with 24-hour in-patient care by licensed nursing staff who help with all activities of daily living. *Id.* § 503(f).

[5]The Barstow Campus lacked the required certification to provide Skilled Nursing Care and was prohibited from admitting outside applicants at that level of care. The Chula Vista Campus did not open a Skilled Nursing Care facility until February 2002, after Dorothy died.

period beginning in early 2000, Dorothy applied to, and was denied admission by, each Campus of the Home.

Mary Martin cared for her mother until her mother died in November 2001. During that time, Mary used her own money to pay for her mother's care. Mary also suffered "anxiety, frustration, sleeplessness, and despair."

Following Dorothy's death, Plaintiffs brought this action, alleging that Defendants illegally denied Dorothy admission to the Home because of her disability and stating claims under numerous theories of recovery. Over the next three years, those claims were winnowed down to claims against the Department under the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and claims against the Department's officers in their individual capacities under 42 U.S.C. § 1983 for violations of the Equal Protection Clause and California tort law. Plaintiffs sought to recover compensatory, special, and punitive damages.

The case was tried to a jury for a week. Before the jury returned its verdict, the parties filed cross-motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The district court granted Defendants' motion in part, dismissing Plaintiffs' equal protection and state law tort claims against the Department's officers, Mary Martin's claims under the ADA and the Rehabilitation Act against the Department, and the Estate's request for compensatory damages under the ADA and the Rehabilitation Act. The jury returned a verdict in favor of the Department on Plaintiffs' remaining ADA and Rehabilitation Act claims. Plaintiffs again moved for judgment as a matter of law or, in the alternative, a new trial. Defendants moved for costs. The district court denied Plaintiffs' motion and granted costs to Defendants, but only those associated with the Rehabilitation Act, equal protection, and state law tort claims. Plaintiffs timely appeal.

## STANDARDS OF REVIEW

We review de novo both the district court's entry of judgment as a matter of law, *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003), and its denial of a renewed motion for judgment as a matter of law, *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). In both instances, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.*; *Horphag*, 337 F.3d at 1040.

"Judgment as a matter of law is proper when the evidence permits a reasonable jury to reach only one conclusion." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (internal quotation marks omitted). A renewed motion for judgment as a matter of law should be granted if the evidence permits only one conclusion and that conclusion is contrary to the jury's verdict. *Pavao v. Pagay,* 307 F.3d 915, 918 (9th Cir. 2002).

We also review de novo the existence of standing. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 n.3 (9th Cir. 2008).

We review for abuse of discretion the denial of a motion for a new trial. *Pavao*, 307 F.3d at 918. "A trial court may grant a new trial only if the verdict is against the clear weight of the evidence, and may not grant it simply because the court would have arrived at a different verdict." *Id.* We also review for abuse of discretion a district court's evidentiary rulings and will not reverse in the absence of prejudice. *Josephs*, 443 F.3d at 1064.

When evaluating a challenge to jury instructions, we consider "the charge as a whole to determine whether it is misleading or misstates the law . . . and [we] will not reverse a judgment because of an erroneous instruction if the instructions fairly and adequately cover the issues." *Id.* at 1065 (internal quotation marks omitted). Although the district court

has "substantial latitude in tailoring jury instructions," we review the instructions de novo if they are challenged as a misstatement of law. *Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir. 1998). But reversal is not required "if the error was more probably than not harmless." *Id.* (internal quotation marks omitted).

We also review for abuse of discretion an award of costs and will overturn the award "if it is based on an erroneous determination of law." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

## DISCUSSION

### A. *The Estate's ADA and Rehabilitation Act Claims*

[1] The Estate first argues that the Department violated the ADA and the Rehabilitation Act. Title II of the ADA and section 504 of the Rehabilitation Act prohibit discrimination because of a disability.[6] To establish a violation of either statute, the Estate must show that: (1) Dorothy Martin was disabled within the meaning of the statute; (2) she was "otherwise qualified" for the Home's services—i.e., that she

---

[6]Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The Rehabilitation Act provides in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

could meet the essential eligibility requirements of such services, with or without reasonable accommodation; (3) she was denied the services because of her disability; and (4) the Department received federal financial assistance (for the Rehabilitation Act claim) or was a public entity (for the ADA claim).[7] *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

**[2]** The parties agree that Dorothy was "disabled" within the meaning of the ADA and the Rehabilitation Act and that the Department is a public entity that receives federal assistance. The parties disagree, however, on whether Dorothy was "otherwise qualified" for services and whether she was denied those services because of her disability.

**[3]** Plaintiffs contend that Dorothy was a "qualified" individual because she satisfied the statutory requirements of California Military & Veterans Code section 1012(a). We agree. Dorothy was an honorably discharged veteran and a California resident, so she met those basic eligibility requirements.

**[4]** In so holding, we reject Defendants' argument that the regulatory requirements appearing in California Code of Regulations sections 501-503 are eligibility requirements. Those regulations prescribe space and resources considerations that must be taken into account when deciding whether an otherwise eligible applicant should be admitted to the Home. For example, section 501(a) provides that the Home "shall admit all eligible applicants, provided that care for their needs can be furnished within the available resources of the Veterans Home and subject to the levels of care for which direct admission is permitted." Cal. Code Regs. tit. 12, § 501(a). By requiring that the Home admit all *eligible* applicants as long

---

[7]Because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," we have consistently applied "the same analysis to claims brought under both statutes," *Zukle*, 166 F.3d at 1045 n.11, and again do so here.

as adequate resources are available, the text of section 501(a) implies that the eligibility criteria come from another source, not from section 501(a).

Similarly, section 501(b) states, in part, that the Home "shall provide equal opportunity for admission to all eligible applicants." *Id.* § 501(b). The reference to "eligible applicants" in this regulation confirms that it supplies admission criteria, and not eligibility requirements. The other regulations also speak in terms of admission criteria rather than eligibility requirements. *See, e.g.*, *id.* § 501.1 ("The Veterans Home shall refuse *admission* to applicants with medical conditions or disabilities requiring special care . . . ." (emphasis added)); *id.* § 502(a) ("The Veterans Home shall *admit* veterans on a first come, first served basis . . . ." (emphasis added)).

Moreover, construing the regulations in sections 501-503 as admission criteria, rather than eligibility requirements, better reflects the common understanding of the concept of eligibility. An individual's eligibility for a certain program generally refers to a determination based on that individual's own characteristics. By contrast, the requirements in sections 501-503 restrict admission because of factors that have little to do with an applicant's personal eligibility for services, such as the availability of resources to care for the applicant.

**[5]** For these reasons, we conclude that Dorothy was "otherwise" qualified for the Home's services. She met the eligibility requirements of section 1012(a) and did not have to meet the requirements of sections 501-503. Because Dorothy was "otherwise" qualified, we need not address whether reasonable accommodation was possible.

We next turn to the causation element of Plaintiffs' claims. Although Dorothy was otherwise qualified for Home services, the Estate failed to establish violations of the ADA and the Rehabilitation Act because it could not prove that Dorothy was denied those services "by reason of" (for the ADA claim)

or "solely because of" (for the Rehabilitation Act claim) her disability.

[6] With respect to the ADA claim, we have held that the phrase "by reason of" in the statute establishes a "motivating factor" causal standard for liability when there are two or more possible reasons for the challenged decision and at least one of them may be legitimate. *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1066 (9th Cir. 2005). That is, if the evidence could support a finding that there is more than one reason for an allegedly discriminatory decision, a plaintiff need show only that discrimination on the basis of disability was a "motivating factor" for the decision. *Id.* Here, however, Dorothy never argued that there was more than one reason for denying her admission to the Home. She consistently argued that the *only* reason was her disability.[8]

[7] Because Dorothy eschewed a mixed-motive theory, it is questionable whether the "motivating factor" test should apply. But, even if it should, Dorothy failed to show that her disability was a motivating factor for denying her admission to the Home. The evidence at trial demonstrated that Dorothy was denied admission because of the Home's lack of resources and space to provide the level of care that she required. Dorothy required help with at least five activities of

---

[8]The district court discussed this issue in its order holding that Plaintiffs were not entitled to a "motivating factor" instruction. *See Head*, 413 F.3d at 1065-66 (noting that a "motivating factor" instruction is not necessary if the evidence in a particular case does not suggest "more than one possible reason" for the challenged action). The court noted that *Plaintiffs'* proposed jury instructions directed the jury to consider whether Dorothy's disability was "*the*" determining factor for the denial or admissions, not "*a*" determining factor. Plaintiffs' proposed jury instructions also stated that "plaintiff[s] claim[ ] that Dorothy Martin's disability was the *sole* reason for the defendant[s'] decision not to provide benefits and services to Dorothy Martin." (Emphasis added.) The district court further noted that discrimination on the basis of disability *alone* was Plaintiffs' theory of the case "from the beginning of the litigation," so no mixed motive instruction was necessary.

daily living, which meant that she qualified only for Skilled Nursing Care. No beds were available in the Yountville Campus Skilled Nursing Care facility when Dorothy applied, and neither the Chula Vista Campus nor the Barstow Campus had licensed Skilled Nursing Care facilities into which she could have been admitted. In other words, Dorothy was denied admission because none of the facilities had adequate resources to be able to care for her properly, not because of her disability. The verdict form reflects that the jury unanimously found that Dorothy failed to prove "that the defendant California Department of Veterans Affairs discriminated against Dorothy Martin *by reason of her disability*" (emphasis added), and the evidence at trial supports that finding.

The causal standard for the Rehabilitation Act is even stricter, demanding that Dorothy show that she was denied services "solely by reason of" her disability. 29 U.S.C. § 794(a). As we have explained above, Dorothy failed to show that she was denied admission solely by reason of her disability.

[8] In sum, we hold that, on this record, the jury reasonably found that the Department did not discriminate against Dorothy Martin on the basis of her disability. The policies that Plaintiffs attack, rather than discriminating on the basis of disability, simply reflect the unfortunate fact that a facility with limited resources cannot serve every disabled individual who needs care. The Department must decide whom to admit and whom to turn away. Here, it has made decisions on the permissible basis of the availability of adequate resources to care for an individual applicant, not on the impermissible basis of disability discrimination.

B.   *Mary Martin's ADA and Rehabilitation Act Claims*

Mary Martin appeals the district court's grant of judgment as a matter of law to the Department on her ADA and Rehabilitation Act claims, which allege financial and emotional loss as a result of the Department's alleged discrimination

against her mother. The district court held that Mary's ADA and Rehabilitation Act claims were procedurally improper because the Department did not cause her direct injury.

**[9]** We need not reach the question whether Mary can bring third-party claims under the ADA and the Rehabilitation Act because her derivative claims are premised entirely on the existence of illegal discrimination against Dorothy. Because the Department did not discriminate against Dorothy, no derivative claim could succeed on the merits, even if it were procedurally proper. *See United States v. Washington*, 969 F.2d 752, 755 (9th Cir. 1992) ("We may affirm on any basis supported by the record even if the district court did not rely on that basis." (internal quotation marks omitted)).

## C.    *The Estate's § 1983 Claim*

**[10]** In a claim brought under 42 U.S.C. § 1983, the Estate alleges that the Department's officers violated the Equal Protection Clause by treating Dorothy and similarly situated applicants—those with Alzheimer's-related dementia who are not self-sufficient—differently than other applicants. "[A] governmental policy that purposefully treats the disabled differently from the non-disabled need only be 'rationally related to legitimate legislative goals' to pass constitutional muster." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (quoting *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996)); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442-43 (1985) (declining to apply heightened scrutiny to a classification based on mental retardation). Applying that standard, we have no difficulty concluding that the Department's admission policies pass constitutional muster.

**[11]** The government "must have substantial latitude to establish classifications that . . . account for limitations on the practical ability . . . to remedy every ill." *Plyler v. Doe*, 457 U.S. 202, 216 (1982); *see also Lipscomb v. Simmons*, 962 F.2d 1374, 1380-81 (9th Cir. 1992) (en banc) (upholding the

allocation of "finite resources available to the state" in foster home funding because it was rationally related to the government's interest in "maximiz[ing] the amount of money available" for the program). The Home does not reject applicants because of dementia; rather, the Home accepts applicants with dementia *if* there are resources available at the level of care required for them *and* sufficient resources remain to meet the anticipated care requirements of all current residents. The Department's officers' method of classifying applicants on the basis of their initial level of self-sufficiency is rationally related to the goal of providing life-long care to as large a group as possible, given limited resources and a huge population of potentially eligible California veterans.[9] Consequently, we affirm the district court's grant of judgment to Defendants as a matter of law on this claim.

### D.    *Mary Martin's § 1983 Claim*

[12] Mary Martin advances a § 1983 claim for the violation of Dorothy Martin's equal protection rights. As a general rule, a third party does not having standing to bring a claim asserting a violation of someone else's rights. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). We recognize an exception to this general rule if, among other things, "there . . . exist[s] some hindrance to the third party's ability to protect his or her own interests." *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995) (internal quota-

---

[9]In 2007, California was home to nearly 2.2 million veterans. *See* Geographic Distribution of VA Expenditures for FY 2007, California, http://www1.va.gov/vetdata/docs/GDX_FY07.xls (last visited Nov. 5, 2008) (estimating the total veteran population as of Sept. 30, 2007). To serve that population, the Home has space available for only 2,000 residents in its three Campuses. *See* Information for Applying to the Veterans Home of California, http://www.cdva.ca.gov/Homes/DocsAndImages/vhcinfo.pdf (last visited Mar. 18, 2009) (describing the approximate number of beds available at each Campus).

tion marks omitted). Here, the Estate, which is the other Plaintiff in this action, has pursued a procedurally proper (albeit substantively unsuccessful) equal protection claim directly on behalf of Dorothy Martin. We therefore hold that Mary Martin does not have standing to bring a claim under § 1983 alleging that Defendants violated her mother's right to equal protection under the laws.

E.   *The Estate's State Law Tort Claims for Emotional Distress*

**[13]** The Estate alleges tort claims of intentional infliction of emotional distress and negligent infliction of emotional distress under California law. The district court held that, under California law, the Estate's tort claims for emotional distress did not survive the death of Dorothy Martin. We agree.

Under California law,

> [i]n an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that decedent would have been entitled to recover had the decedent lived, and *do not include damages for pain, suffering, or disfigurement*.

Cal. Civ. Proc. Code § 377.34 (emphasis added). Notwithstanding the emphasized text, which clearly precludes recovery of emotional distress damages, the Estate reasons that the tort claims survive because Dorothy could have recovered punitive damages.

The California Court of Appeal recently considered and rejected this precise argument. *Berkley v. Dowds*, 61 Cal. Rptr. 3d 304, 316 (Ct. App. 2007). Section 377.34 does not

permit recovery for emotional distress upon the death of the person allegedly harmed and, under long-established California authority, "an award of compensatory damages in some amount is a prerequisite to a punitive damage award." *Berkley*, 61 Cal. Rptr. 3d at 316. We see no reason to disagree with the analysis of the California Court of Appeal. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (stating that, if the state's highest court has not decided the issue and "there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts" (internal quotation marks omitted)). Accordingly, we affirm the district court's grant of judgment as a matter of law to Defendants on the Estate's state law tort claims for emotional distress.

F.   *Mary Martin's State Law Tort Claims for Emotional Distress*

**[14]** Mary Martin alleges a claim of intentional infliction of emotional distress under California Law and argues that the alleged violations of the ADA, Rehabilitation Act, and § 1983 support her claim that Defendants' conduct was outrageous. In order to establish a claim of intentional infliction of emotional distress, Mary must prove, among other things, "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991) (internal quotation marks omitted). As discussed above, Plaintiffs' claims of discrimination under the ADA, the Rehabilitation Act, and § 1983 fail. Consequently, this state law claim fails as well.

Mary also alleges a "bystander" claim of negligent infliction of emotional distress under California law. In order to establish that claim, Mary must prove, among other things, that she "[wa]s present at the scene of the injury producing event at the time it occur[red] and [wa]s then aware that it

[wa]s causing injury to the victim." *Thing v. La Chusa*, 771 P.2d 814, 829-30 (Cal. 1989). Because we have held that Dorothy suffered no legally cognizable injury, Mary cannot recover on a bystander theory. Accordingly, we affirm the district court on Mary Martin's state law tort claims of emotional distress.

G.   *Costs to Defendants*

Finally, Plaintiffs challenge the district court's award of costs to Defendants. We are not persuaded by their arguments.

**[15]** The district court ruled that Defendants were not entitled to costs under the ADA because such costs are appropriate only if the claim is frivolous, unreasonable, or without foundation. *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1190 (9th Cir. 2001) (holding that the standard announced in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)—permitting the recovery of *attorney fees* by a prevailing defendant under Title VII only when the claim "was frivolous, unreasonable, or without foundation"—also applies to the award of costs under the ADA). The court held that Plaintiffs' ADA claims did not meet that standard.

The district court awarded costs under the Rehabilitation Act, however. Although there was no direct authority to guide it, the district court observed that the costs provision of the Rehabilitation Act is more similar to the costs provision in Title VII than to the costs provision in the ADA. For that reason, the district court concluded that costs under the Rehabilitation Act are governed by *National Organization for Women v. Bank of Cal., N.A.*, 680 F.2d 1291, 1294 (9th Cir. 1982) (per curiam), which held that costs under Title VII follow the general rule that costs are awarded "as a matter of course absent express statutory provision, 'unless the court otherwise directs.' " *Id.* at 1294 (quoting Fed. R. Civ. P. 54(d)). The district court also ruled that Defendants were entitled to costs on

Plaintiffs' state law tort claims. The court apportioned costs and, because the ADA claim was the central claim in Plaintiffs' action, awarded only 50% of Defendants' request.

Plaintiffs argue that the same standard—the *Christiansburg* standard—that governs costs under the ADA should govern costs under the Rehabilitation Act. To our knowledge, none of our sister circuits has applied the *Christiansburg* standard to costs under the Rehabilitation Act, and we decline to do so here.

**[16]** In *Brown*, we examined the text of the ADA to determine whether our ruling in *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997), in which we acknowledged that the *Christiansburg* standard applies to a request for *attorney fees* under the ADA, also applied to a request for *costs* under the ADA. *Brown*, 246 F.3d at 1190. We looked at the text of the costs provision of the ADA: "[T]he court . . . , in its discretion, *may* allow the prevailing party . . . a reasonable attorney's fee, *including* litigation expenses, and costs . . . ." 42 U.S.C. § 12205 (emphases added). We observed that the ADA makes fees and costs parallel and held that, as a result, the *Christiansburg* standard does apply to costs under the ADA. *Brown*, 246 F.3d at 1190.

That parallel structure in the ADA between costs and attorney fees is critically absent from the relevant texts of both the Rehabilitation Act and Title VII. *Compare* 29 U.S.C. § 794a(b) [Rehabilitation Act] (permitting the prevailing party to recover "a reasonable attorney's fee *as part of the costs*" (emphasis added)), *and* 42 U.S.C. § 2000e-5(k) [Title VII] (allowing "a reasonable attorney's fee . . . *as part of the costs*" (emphasis added)), *with* 42 U.S.C. § 12205 [ADA] (permitting the court to award "a reasonable attorney's fee, *including* litigation expenses, and *costs*" (emphases added)). Thus, our rationale in *Brown* for applying *Christiansburg* to the award of costs under the ADA does not carry over to costs under the Rehabilitation Act.

**[17]** Considering the similarity between the costs provisions in Title VII and the Rehabilitation Act, it is appropriate to use our Title VII precedent, as the district court did, to establish a standard for the award of costs under the substantively identical text in the Rehabilitation Act. As is the case with Title VII, "[t]here is no express statutory provision for applying *Christiansburg* to cost awards [under the Rehabilitation Act], and we see no reason to impose rigid limitations on the district court's discretion." *Nat'l Org. for Women*, 680 F.2d at 1294.

Moreover, the text of the Rehabilitation Act supports an inference that costs are to be awarded in the ordinary course. Section 794a(b) of the Rehabilitation Act provides that, "[i]n any action or proceeding to enforce or charge a violation of [the Rehabilitation Act], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." That text makes an attorney fee award discretionary; if given, it may be made a part of the costs. The text does not suggest that "*the* costs" are similarly discretionary, but rather that they are a given, to which fees *may* attach. Accordingly, the wording of the statute supports an inference that the general provision in Rule 54(d)(1) of the Federal Rules of Civil Procedure—that costs are allowed in the ordinary course to the prevailing party—applies. Rule 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party." *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc).

**[18]** For these reasons, we hold that an award of costs under the Rehabilitation Act need not satisfy the *Christiansburg* test and that the district court did not abuse its discretion in awarding costs to Defendants as the prevailing party on the Rehabilitation Act claim.

With respect to the calculation of costs, the district court justified its award by explaining that, although Defendants could not recover costs on Plaintiffs' central claim—the ADA

claim—the remaining three primary claims accounted for about half the case. Thus, the court awarded 50% of Defendants' total request. Having presided over the case from its inception, the court knew the relative proportion of the total litigation that each of the primary claims represented. The court's explanation, although not extensive, was sufficient and was reasonable. Therefore, we affirm the award of costs.

**AFFIRMED.**

---

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I dissent in part and concur in part in the court's opinion. I disagree with the majority's opinion on two points: (1) that "an award of costs under the Rehabilitation Act need not satisfy the *Christiansburg* test" and (2) "that the district court did not abuse its discretion in awarding costs to Defendants as the prevailing party on the Rehabilitation Act claim." Maj. Op. at 3621. In all other respects, I agree and concur.

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), the Supreme Court held that, under Title VII, a prevailing defendant may only recover attorney's fees when the plaintiff's claim is "frivolous, unreasonable, or without foundation." In particular, the Supreme Court noted that "assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote vigorous enforcement of the provisions of Title VII." *Id.* at 422.

We have applied the *Christiansburg* standard to both attorney's fees *and costs* under the American with Disabilities Act ("ADA"). *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997) (applying the *Christiansburg* stan-

dard to an award of attorney's fees under the ADA); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1190 (9th Cir. 2001) (applying the *Christiansburg* standard to an award of costs under the ADA). But here the majority's opinion concludes that the *Christiansburg* standard does not apply to an award of costs to a prevailing defendant under the Rehabilitation Act. Maj. Op. at 3619-21.

The majority's opinion states that "the wording of the statute supports an inference . . . that costs are allowed in the ordinary course to the prevailing party." Maj. Op. at 3621. I believe that the plain text of the Rehabilitation Act's cost provision is ambiguous. The Rehabilitation Act's cost provision states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b). The Rehabilitation Act, however, does not clearly state whether costs are discretionary or presumed, nor does the Rehabilitation Act state which standard should be applied to an award of costs.

"If the statute's terms are ambiguous, we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Jonah R. v. Carmona*, 446 F.3d 1000, 1007 (9th Cir.2006) (citing *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1045 (9th Cir. 2005). While the majority's opinion prefers to resolve any ambiguity by analogizing the text of the Rehabilitation Act to the text of Title VII, I believe that it is more appropriate that we look to the Rehabilitation Act's overall purpose, and that we ensure that the cost provisions of the Rehabilitation Act and the ADA are interpreted consistently because they deal with the same subject: disability rights. *See United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) (quoting *Jonah R.*, 446 F.3d at 1007) (stating that "we may consider related statutes because 'statutes dealing with similar subjects should be interpreted harmoniously' ").

Both the Rehabilitation Act and the ADA were enacted for the specific purpose of protecting the rights of individuals liv-

ing with disabilities. *Compare* 29 U.S.C. § 701(b)(2) (stating that the purpose of the Rehabilitation Act is "to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individuals with significant disabilities") *with* 42 U.S.C. § 12101 (stating that the purpose of the ADA is "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities" and "to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities"). Indeed, as was the case here, many plaintiffs living with disabilities present claims under both the ADA and Rehabilitation Act when bringing a federal action to protect their rights. Accordingly, the standard for awarding costs to a prevailing defendant under the ADA and the Rehabilitation Act should be consistent.

Therefore, the better rule would be to apply the *Christiansburg* standard to an award of costs to a prevailing defendant under both the Rehabilitation Act and the ADA. If a plaintiff pursues an unsuccessful Rehabilitation Act claim, he should not be forced to bear the costs associated with litigation unless his claim was frivolous, unreasonable, or without foundation. Subjecting a plaintiff to an award of costs on reasonable Rehabilitation Act claims will likely deter individuals with disabilities from bringing suit and thus limit effective enforcement of the statute.

Accordingly, I dissent in part and concur in part.