**NOT FOR PUBLICATION**

FILED

MAY 27 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIC REIBER; et al., | No. 13-35370 |
| Plaintiffs - Appellants, | D.C. No. 2:11-cv-00129-TOR |
| v. | |
| THE CITY OF PULLMAN, a political subdivision of the State of Washington; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted October 9, 2014
Seattle, Washington

Before: PAEZ, BYBEE, and CALLAHAN, Circuit Judges.

Plaintiffs Eric Reiber ("Reiber") and his co-Plaintiffs Rudy Fisher,

Christopher Wehrung, Christopher Volk, John Gollnick, and Jason Wilkins ("co-

Plaintiffs") (collectively "Plaintiffs") appeal the district court's grant of judgment

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

as a matter of law under Federal Rule of Civil Procedure 50(b) and partial summary judgment in favor of Defendants. Plaintiffs, firefighters with the Pullman City Fire Department, filed this lawsuit against the City of Pullman and several individuals (collectively "Defendants") stemming from the investigation of a hostile work environment complaint against Reiber and a complaint of retaliation against Reiber and his co-Plaintiffs. As a result of the investigations, Plaintiffs were subject to various forms of discipline. The district court granted summary judgment on all of Plaintiffs' federal constitutional and state law tort claims. Plaintiffs' retaliation claims under Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Washington Law against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.210, proceeded to trial. After the jury returned a verdict[1] in favor of Reiber under the WLAD and in favor of his co-Plaintiffs under both statutes, the court granted the Defendants' renewed Rule 50(b) motion and entered judgment in favor of Defendants. Plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** We review *de novo* a grant of judgment as a matter of law under Rule 50(b). *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 999 (9th Cir. 2008).

---

[1]The jury found only the City of Pullman and the Estate of Patrick Wilkins liable.

2

The question is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion that is contrary to the jury's verdict. *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009).

2.      Both Title VII and WLAD retaliation claims require a plaintiff to establish three elements: the plaintiff engaged in a protected activity, the plaintiff suffered an adverse employment action, and there was a causal relationship between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *Milligan v. Thompson*, 42 P.3d 418, 424 (Wash. App. 2002).  Under both federal and Washington law, engaging in protected activity may include opposing a practice or participating in an investigation.  42 U.S.C. § 2000e-3(a); Wash. Rev. Code § 49.60.210(1).

3.      Reiber alleged that Defendants retaliated against him when they investigated a sexually hostile work environment complaint and the later complaint of retaliation.  There was no evidence at trial, however, that Reiber engaged in any protected activity that predated either investigation.  Although the scope of the WLAD's participation clause, Wash. Rev. Code § 49.60.210(1), is unsettled, we need not decide whether it applies to an employer's internal investigation because Reiber did not participate in any investigation or other proceeding before the City

3

of Pullman began to investigate him. Further, there was no evidence that Reiber opposed anything before he was investigated. Nothing in the trial transcript even suggests that Reiber "ha[d] an objectively reasonable belief [that his] employer . . . violated the law." *Ellis v. City of Seattle*, 13 P.3d 1065, 1071 (Wash. 2001).

**4.** Further, there was no evidence at trial that retaliation was a "substantial factor" in Reiber's discipline. *See Allison v. Hous. Auth.*, 821 P.2d 34, 42 (Wash. 1991). The City's investigation and subsequent discipline of Reiber were based on complaints and allegations that Reiber largely did not dispute.

**5.** The co-Plaintiffs' retaliation claims also fail on the causation element. Employers are "subject to a strong inducement to ferret out and put a stop to any discriminatory activity in their operations." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 278 (2009). The retaliation complaints against the co-Plantiffs were based on letters they had written in support of Reiber's response to Chief Wilkins's initial disciplinary notice. Taking the evidence in the light most favorable to Plaintiffs, as we must under Rule 50(b), we agree with the district court that there was no evidence before the jury that retaliatory motive was the but-for cause of the investigations, *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013) (Title VII), or a substantial factor in causing the investigations, *see Allison*, 821 P.2d at 42 (WLAD). In sum, the evidence at trial

4

was insufficient, as a matter of law, to establish that Reiber and his co-Plaintiffs were subject to unlawful retaliation under Title VII or the WLAD.

6.      We review de novo the district court's decision to grant summary judgment. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004).

7.      Reiber argues that the district court improperly granted summary judgment on his Fourteenth Amendment procedural due process claim. Assuming, but not deciding, that Reiber had a property interest in his employment, he was entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Because Reiber was able to submit a comprehensive rebuttal before Chief Wilkins imposed final discipline, and because Reiber was offered several opportunities for additional process after the *Loudermill* hearing, the district court did not err in granting summary judgment in favor of Defendants on this issue.

5

**8.** Reiber argues that the district court improperly granted summary judgment on his Fourteenth Amendment liberty interest claim in his professional reputation. We disagree. It is undisputed that Reiber was provided multiple "name-clearing" hearing opportunities. *See Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004).

**9.** Our review of the co-Plaintiffs' First Amendment claims is "limited to the public concern inquiry" because the district court's analysis ended there. *See Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). We affirm the district court's grant of summary judgment because Plaintiffs produced no evidence of "failed . . . efforts, . . . botched investigations," professional incompetence, or even "someone d[oing] his job poorly." *See id.* at 711-12.

**10.** The Plaintiffs argue that the district court improperly granted summary judgment on their equal protection claim. Because a class of one claim has "no application in the public employment context," *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008), only a selective prosecution claim remains. Yet there was no evidence that some "impermissible ground" divided Reiber and his supporters (including co-Plaintiffs) from his accusers, *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 922 (9th Cir. 2012) (en banc), or that Reiber's accusers were "similarly situated" to Plaintiffs, *United States v. Armstrong*, 517 U.S. 456, 465

6

(1996). Thus, we affirm the district court's grant of summary judgment on the Plaintiffs' equal protection claim.

**11.** We affirm the district court's grant of summary judgment on Reiber's claim of outrage because Reiber presented no evidence of "extreme and outrageous conduct" that "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious and utterly intolerable in a civilized community." *Corey v. Pierce Cnty.*, 225 P.3d 367, 374 (Wash. App. 2010) (quoting *Dicomes v. State*, 782 P.3d 1002 (Wash. 1989) and *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)).

**12.** We affirm the district court's grant of summary judgment on Plaintiffs' defamation, defamation by implication, and false light claims. A conditional privilege applies to these claims, as the Defendants shared facts they "correctly or reasonably" believed to exist with others with "a common interest" in that subject matter. *Ward v. Painters' Local Union No. 300*, 252 P.2d 253, 257 (Wash. 1953); *see also Lawson v. Boeing Co.*, 792 P.2d 545, 549 (Wash. App. 1990) (applying the privilege to an employment misconduct investigation, even assuming the underlying allegations are false). Establishing abuse of the privilege requires "[p]roof of knowledge of, or reckless disregard as to, the falsity of the statements." *Lawson*, 792 P.2d at 549. Here, Plaintiffs presented no evidence that would create a genuine issue of material fact regarding whether Defendants abused the privilege.

7

**13.** We do not consider any aiding and abetting claim because Plaintiffs have waived it by not addressing the issue in district court. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992).

**14.** To establish a civil conspiracy in Washington State, the plaintiff must show that (1) "two or more persons combine[d] to accomplish an unlawful purpose or . . . accomplish some purpose not in itself unlawful by unlawful means," and (2) that the alleged coconspirators "entered into an [a]greement to accomplish the object of the conspiracy." *Corbit v. J.I. Case Co.*, 424 P.2d 290, 295 (Wash. 1967); *see also* 16A WASH. PRAC., TORT LAW AND PRACTICE § 23:1 (4th ed.). Because we affirm the district court's rulings on the Rule 50(b) motion and on summary judgment, Plaintiffs presented insufficient evidence of "unlawful purpose" or "unlawful means" to survive summary judgment. *See Corbit*, 424 P.2d at 295.

**15.** The district court's denial of a motion for reconsideration is reviewed for abuse of discretion. *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012).

**16.** Reconsideration is appropriate if there is "newly discovered evidence," if the district court "committed clear error or the initial decision is manifestly unjust," or if there is an "intervening change in controlling law." *Sch. Dist. No. 1J v. AcandS, Inc.*, 5 F.3d 1225, 1262 (9th Cir. 1993). Because none of the circumstances that

8

would warrant reconsideration exist, we affirm the district court's decision not to reconsider its grant of partial summary judgment.

17. In light of our affirmance of the district court's rulings, Plaintiffs' request for attorney's fees is moot.

**AFFIRMED**

<u>Reiber v. City of Pullman,</u> No. 13-35370

CALLAHAN, Circuit Judge, concurring in part, and dissenting in part:

I am compelled to dissent from the majority's affirmance of the district court's judgment as a matter of law and summary judgment dismissing Reiber's defamation-related claims.[1]  I would reinstate the jury's verdict in favor of the Plaintiffs and allow the defamation-related claims against Reiber to proceed to trial.

Vacating a jury verdict is no small matter.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–51 (2000); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021–22 (9th Cir. 2008) ("The jury is the 'constitutional tribunal provided for trying facts in courts of law.'") (quoting *Berry v. United States*, 312 U.S. 450, 453 (1941)).  We must ask whether the evidence, construed in the light most favorable to the nonmoving party, "permits only one conclusion and that conclusion is contrary to the jury's verdict." *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009).  Although the majority cites this rule, I disagree with its application of the standard.

---

[1]I concur with the majority's affirmance of the district court's grant of summary judgment dismissing Reiber's Fourteenth Amendment and outrage claims, and dismissing co-Plaintiffs' First Amendment and defamation-related claims.

1

The facts, viewed in the light most favorable to the Plaintiffs, as we are required to view them, are as follows: In 2009, Eric Reiber was a Captain with the Pullman City Fire Department. He, along with others in the department, observed that a female trainee appeared to be have unprofessional interactions with a male firefighter. After Reiber gave the trainee a less than positive performance review, which included a recommendation to spend less time with the firefighter, she complained of a hostile work environment.

The complaint eventually made its way to the Chief of the Fire Department, Patrick Wilkins. Chief Wilkins and Reiber had a strained relationship over the years, due in part to Reiber's position as President of the local firefighters' union. Upon learning of the trainee's complaint, Chief Wilkins solicited and received written statements from the trainee and other firefighters complaining about Reiber. The most lurid allegation was that Reiber had asked a firefighter's wife for sexually explicit photos, although the accusing firefighter flip-flopped as to whether this actually occurred.

Chief Wilkins placed Reiber on paid administrative leave while the City's Human Resources Director conducted an internal sexual harassment investigation. The vast majority of the questions asked during the investigation implied that Reiber was a suspect, for example, asking whether the interviewee "felt

2

uncomfortable" or "intimidated" around him; witnessed "inappropriate," "disparaging," or "derogatory" behavior by him; and had been "requested to provide Captain Eric Reiber with sexually explicit photos." Although Reiber admitted to some of the unprofessional conduct uncovered by the investigation, he vehemently denied that he had sexually harassed anyone or that he had asked for sexually explicit photos.

Reiber's coworkers, the co-Plaintiffs, learned about the sexual harassment investigation. They attempted to speak on Reiber's behalf at his pre-disciplinary hearing, but Chief Wilkins would not permit them. The co-Plaintiffs then submitted letters on Reiber's behalf, calling into question the propriety of the investigation and doubting the veracity and motivations of Reiber's accuser and her supporters. However, Chief Wilkins concluded that Reiber had created a hostile work environment, including that Reiber had asked a firefighter's wife for naked pictures. Chief Wilkins suspended Reiber for one month, and demoted him to the rank of firefighter for six months, reciting the punishment in a lengthy and vitriolic letter. Reiber grieved his discipline to the City Supervisor but was unsuccessful. One day prior to the grievance hearing, the City for the first time produced a copy of the written statement that formed the basis for the accusation that Reiber had requested sexually explicit photos. It claimed the omission was

3

inadvertent.

After the co-Plaintiffs submitted their written statements in support of Reiber, a City attorney met with the accuser and her supporters. Soon thereafter, two supporters filed retaliation complaints against Plaintiffs, which prompted the City to conduct another investigation, this time hiring an outside firm. The investigator limited the scope of her investigation to the retaliation complaints and did not permit interviewees to expand on the previous sexual harassment allegations. The investigation led Chief Wilkins to discipline the co-Plaintiffs who had supported Reiber. Plaintiff Fisher was demoted and suspended without pay for 30 days. The other plaintiffs received either three- or six-day suspensions. Co-Plaintiffs appealed and grieved their discipline to the City Supervisor who ultimately reversed it. By comparison, one of the accuser's supporters admitted to bringing pornography into work and making crude references in the workplace about sex. Chief Wilkins gave him only a written warning.

Reiber and co-Plaintiffs brought a lawsuit against the City, Chief Wilkins, the City's Human Resources Manager, and the City Supervisor alleging, among other things, that Defendants retaliated against them for opposing a corrupt and contrived sexual harassment investigation. The retaliation claims proceeded to trial before eight jurors. Trial took six days during which the parties introduced

testimony from over 20 witnesses including the six Plaintiffs; the trainee who accused Reiber of creating a hostile work environment; the two firefighters who alleged that Reiber requested sexually explicit photographs; the individuals who conducted the investigations; and the City Supervisor to whom the discipline was appealed. The parties also introduced more than 100 exhibits. After deliberations, the jury returned verdict overwhelmingly in favor of Plaintiffs, awarding $1 million: $325,800 to Reiber, and $135,000 apiece to each of the other five co-Plaintiffs.[2]

This should have been the end of the litigation. However, the Defendants moved to set aside the jury verdict, the district court granted the motion, and the majority affirms. This decision cannot be sustained under the appropriate standard of review. *See Reeves*, 530 U.S. at 151 ("[the court] must disregard all evidence favorable to the moving party that the jury is not required to believe"). Drawing all reasonable inferences in favor of the verdict, it is clear that the jury found the City and Chief Wilkins contrived a sexual harassment investigation into Reiber, and disciplined the Plaintiffs for opposing that investigation.

Contrary to the majority's assertion, Reiber engaged in a protected activity

---

[2]The jury found Chief Wilkins liable but not City Human Resources Manager Karen Sires or City Supervisor John Sherman.

by opposing what he reasonably believed to be a contrived, corrupt sexual harassment investigation. This was the theory of the case on which the jury was instructed. Reiber opposed his investigation from the beginning by submitting lengthy written rebuttals, speaking in his defense at the pre-disciplinary hearing, and gathering the support of other firefighters who also opposed the investigation as specious. Based on this evidence, the jury could have concluded that Reiber engaged in a protected opposition activity. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 273–74, 277–80 (2009) (employee's answers to questions regarding "inappropriate behavior" during internal investigation constituted protected opposition activity); *Kahn v. Salerno*, 951 P.2d 321, 332 (Wash. Ct. App. 1998) ("To determine whether an employee was engaged in protected opposition activity, the court must balance the setting in which the activity arose and the interests and motives of the employer and employee.") (internal quotation marks omitted).

The majority states that "[n]othing in the trial transcript even suggests that Reiber had an objectively reasonable belief that his employer violated the law." (internal quotation marks and brackets omitted). But an employee need not be aware that the practice in question is unlawful for her opposition to be protected. *See Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1157 (9th Cir.

6

1982) ("It requires a certain sophistication for an employee to recognize that an offensive employment practice may represent sex or race discrimination that is against the law."); *see also Kahn*, 951 P.2d at 332.  Reiber testified that: "It seemed to be pretty obvious to me that there were – there were some reasons behind these charges that didn't actually have anything to do with me or my performance." Reiber's co-Plaintiffs similarly called into question the propriety of the investigation; one described the investigation as "a witch-hunt, the truth be-damned."  Given this evidence, I would hold that a reasonable employee could believe that a corrupt and contrived sexual harassment investigation violated the law.  Indeed, the district court admitted that the co-Plaintiffs' "perceived corruption during an internal investigation" could amount to a protected activity. The same logic applies to Reiber.

The majority errs further by finding "the evidence at trial was insufficient, as a matter of law, to establish that Reiber and his co-Plaintiffs were subject to unlawful retaliation under Title VII or the WLAD."  "[E]mployers rarely will reveal they are motivated by retaliation [and] plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose." *Hollenback v. Shriners Hospitals for Children*, 206 P.3d 337, 344 (Wash. Ct. App. 2009) (internal quotation marks omitted).  True, the Defendants' stated reason for

7

disciplining Reiber was his inappropriate conduct, and their stated reason for disciplining the co-Plaintiffs was to respond to complaints by other employees. The jury, however, was not required to accept Defendants' assertions for several reasons.

First, Chief Wilkins's disciplinary notice contained ample evidence that Reiber's opposition to the investigation was a "substantial factor" in his discipline. The notice at some length describes Reiber's cultivation of a loyal following and his failure as a leader. The jury could have found that Chief Wilkins's anger with Reiber's vehement challenge to the investigation motivated the decision to discipline him.

Second, there was additional evidence connecting Chief Wilkins's retaliatory animus to his discipline of the co-Plaintiffs. For example, Chief Wilkins punished co-Plaintiffs after they sought to speak, and he refused to let them speak at Reiber's pre-disciplinary hearing. In his discipline notice to Reiber, Chief Wilkins listed co-Plaintiffs by name, and cited them as examples of Reiber's poor leadership style. Also, Chief Wilkins's discipline of co-Plaintiffs was out of proportion to the discipline imposed against another firefighter who brought pornography to work and made inappropriate sexual comments but received only a written warning. Furthermore, the Chief's discipline of the co-Plaintiffs was

8

ultimately reversed by the City Supervisor.  This was further evidence that the jury could consider in determining the Chief imposed discipline based on Plaintiffs' opposition to the investigation, not for their alleged conduct.

Third, the jury was not required to credit the investigations conducted by the City.  The first investigator was an employee of the City (and a co-Defendant) and the second investigator was hired by the City, and therefore, their potential biases against Plaintiffs are evident.  Furthermore, both investigators admittedly limited the scope of their investigations to the narrow issues before them, and declined to examine related issues.  The investigation of the co-Plaintiffs took place after the accuser and her supporters met with the City's attorney; a jury could have determined that their complaints were also contrived.

In sum, there was sufficient evidence of causation to support the jury's verdict, particularly with respect to Plaintiffs' claims under the Washington Law Against Discrimination, which only requires that a protected activity be a "substantial factor" in the adverse employment action.  *See Allison v. Hous. Auth. of Seattle*, 821 P.2d 34, 35, 42 (Wash. 1991) (en banc).

Because I would reinstate the jury verdict finding for Plaintiffs' retaliation claims, I would also hold that the district court erred in dismissing Plaintiffs' civil conspiracy claim (*cf. Adams v. King Cnty.*, 192 P.3d 891, 901 (Wash. 2008) (en

9

banc)), and in declining to consider Plaintiffs' motion for attorneys' fees.

In addition, I would vacate the grant of partial summary judgment of Reiber's defamation, defamation by implication, and false light claims, and let those claims proceed to trial. The record suggests that a jury could conclude the City's accusation that Reiber asked for sexually explicit photos was false, and the relevant employees in the City knew or acted with reckless disregard as to the statement's falsity. *See Hitter v. Bellevue Sch. Dist. No. 405*, 832 P.2d 130, 135–36 (Wash. App. 1992) (citing *Bender v. City of Seattle*, 664 P.2d 492 (Wash. 1983) (en banc)).

A jury verdict may be set aside only where the evidence, viewed in a light most favorable to the prevailing party, allows for one reasonable conclusion and that conclusion is contrary to the jury's verdict. Because the facts in this case do not support such a conclusion, I would reverse the district court's grant of judgment as a matter of law and reinstate the jury's verdict.

10